IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DARYL R. JACKSON,

    Plaintiff,

vs.                                                    CASE NO. 1:08CV127-MP/AK

MICHAEL J. ASTRUE,
Commissioner of Social Security

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II and for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.    **PROCEDURAL HISTORY**

Plaintiff protectively filed an application for DIB and SSI on March 10, 2005, alleging a disability onset date of March 5, 2005, because of physical and neurological injuries caused by a March 5, 2005, motor vehicle accident. Plaintiff petitioned for a

hearing before an administrative law judge (ALJ), who conducted a hearing on August 17, 2007. At the hearing, the Plaintiff amended his disability onset date to April 7, 2007. The ALJ entered an unfavorable decision on September 25, 2007. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

**B.     FINDINGS OF THE ALJ**

The ALJ found that the Plaintiff had three severe impairments–multiple fractures, an organic mental disorder, and a substance abuse disorder–resulting in significant limitation in the Plaintiff's ability to perform basic work activities. Further, his impairments could reasonably be expected to produce the symptoms he complains of, but not to the degree that he describes. His daily activities are inconsistent with the limitations he describes. The ALJ afforded great weight to the 2005 opinions of State agency medical physicians Drs. Bancks, Puestow, Bee and Wise "because they are consistent with the [2007] opinion and record of Dr. Murphy, a rehabilitation specialist who had the benefit of actually examining the claimant." (R. 18, 19). His functional assessment was that the Plaintiff is capable of performing past relevant work as a welder. (R. 19).

**C.     ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in finding that he has a residual functional capacity to perform medium work and is therefore capable of performing past relevant work as a welder. Plaintiff argues that, in making this determination, the ALJ ignored post-onset medical evidence and instead based his decision upon the out-dated pre-

**No. 1:08CV127-MP/AK**

onset medical opinions from Drs. Bancks, Puestow, Bee and Wise from 2005. (Doc. 11 at 6-7).

In addition, Plaintiff argues that the ALJ failed to fully and fairly develop the record by relying upon the pre-onset medical evidence regarding Plaintiff's impairments and only affording 14 minutes for the hearing. As a result, Plaintiff argues, he was denied due process. (Doc. 11 at 6).

The Commissioner responds that the ALJ properly evaluated all relevant medical evidence and the Plaintiff's credibility to make his determination that Plaintiff is not disabled. (Doc. 14 at 18-20). The ALJ did not ignore the post-onset medical evidence provided by Dr. Murphy in May 2007, but rather considered it along with other pre-onset medical evidence, including Dr. Murphy's pre-onset exam conducted February 2007. In addition, Plaintiff's coherence and focus at the hearing, the absence of hospitalizations in the past year, and Plaintiff's ability to work up until April 6, 2007 provided reliable substantial evidence that Plaintiff had the residual functional capacity to lift or carry fifty pounds occasionally and 25 pounds frequently, stand or walk for about six hours in an eight-hour work day, and sit for about six hours in an eight-hour work day.

The Commissioner argues that the Plaintiff has failed to specify any particular matter that the ALJ failed to develop at the hearing. (Doc. 14 at 13). Absent a showing of prejudice, such as a failure to have all relevant evidence before him, the hearing thus satisfies due process and the ALJ's duty to fully and fairly develop the record.

**No. 1:08CV127-MP/AK**

The issue thus presented is whether the Commissioner's decision that Plaintiff is not disabled and is able to perform medium work is supported by substantial evidence in the record and decided by proper legal standards.

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the

**No. 1:08CV127-MP/AK**

Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairment?
3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?
4. Does the individual have any impairments which prevent past relevant work?
5. Do the individual's impairments prevent any other work?

**No. 1:08CV127-MP/AK**

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.** **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff crashed his car into a tree and was hospitalized from March 5, 2005 until March 25, 2005 for rib, pelvis, clavicle and facial fractures as well as a ruptured bladder.  As a result of Plaintiff's fractured pelvis and bladder injury, Plaintiff required a catheter for eight months, had multiple surgeries to repair his urethra, chronic urinary tract infections, chronic pain at his sacroiliac joint, and frequent and painful urination.  (R. 124, 135-136, 223, 237, 334, 336).  His treatments have included inpatient physical therapy for his shoulder and back pain between March 25, 2005 and April 13, 2005 as

**No. 1:08CV127-MP/AK**

well as prescribed medication for his back and pelvic pain from April 13, 2005 up until the administrative hearing. (R. 139, 140, 183, 333, 336).

When he was admitted to the hospital, Plaintiff had a blood alcohol level of 122 and suffered from delerium and an altered mental status. (R. 114). On March 24, 2005, neurologist Dr. Donna Hill examined the Plaintiff and diagnosed him with a possible traumatic brain injury after observing attention, concentration, and memory deficits. (R. 120-21). After Plaintiff's hospitalization in March and April 2005, no psychological treatment was prescribed or recommended.

Shortly after Plaintiff's motor vehicle accident, on June 23, 2005, Dr. William Benet conducted a psychological evaluation of the Plaintiff and noted that Plaintiff was alert, oriented, articulate and showed above-average verbal reasoning, satisfactory attention and concentration, average intellectual ability, and adequate judgment and insight. (R. 160). In addition, Dr. Benet found that despite Plaintiff's short-term memory impairment, "his performance on complex attentional tasks that require the ability to attend to information, hold and process information in memory, and formulate a response based on information was intact." (R. 160). Dr. Benet recommended that the Plaintiff retest his memory in 6-12 months. (R. 160). Plaintiff did not have his memory retested, and there is no report regarding his mental status and capability after his amended disability onset date.

Drs. Val Bee and Steven Wise, non-examining state agency physicians, signed separate Psychiatric Reviews on July 5, 2005 and November 16, 2005 respectively. (R.

**No. 1:08CV127-MP/AK**

165, 192). Dr. Bee noted that Plaintiff had mild restriction of daily living activities and moderate difficulties maintaining concentration, persistence or pace, but these limitations did not meet or equal the listing for organic mental disorders. (R. 166, 175, 177). Dr. Bee also completed a Mental Residual Functional Capacity Assessment report, in which she stated that the Plaintiff appeared "mentally capable of well structured task activity." (R. 181). Dr. Wise remarked in his report that Plaintiff's limitations were physical and did not recommend any psychological treatment, and his . Mental Residual Functional Capacity Assessment report stated that Plaintiff showed "some memory deficits and [alcohol] abuse," but he remained "capable of simple tasks and appropriate relations." (R. 197, 200).

      Plaintiff's other physical injuries, including his broken clavicle, arm and pelvis made steady improvement throughout the rest of 2005. Plaintiff's primary post-motor vehicle accident treating sources have been orthopedist Dr. Mark Scarborough, urologist Dr. James Ivey, and rehabilitative specialist Dr. Wilda Murphy. Shortly after Plaintiff's motor vehicle accident, Dr. Nicholas Bancks, a non-examining state agency physician, stated in a residual functional capacity assessment that Plaintiff would be able to lift 50 pounds occasionally and 25 pounds frequently, walk and stand for up to 6 hours per workday, and occasionally stoop and crouch but not climb. (R. 150-152). On November 15, 2005, Dr. Eric Puestow, a non-examining state agency physician, also completed a physical residual functional capacity assessment and found that Plaintiff would make a full recovery. (R. 184-189). In addition, Dr. Eric Silverstein examined

**No. 1:08CV127-MP/AK**

Plaintiff in January 2006 and stated that Plaintiff's shoulder no longer caused Plaintiff discomfort, and that even though Plaintiff's pelvis and left buttock region caused him some discomfort, Plaintiff's pain was "not too serious." (R. 210, 211). By August 21, 2006, Dr. Ivey found that Plaintiff had full range of motion bilaterally in his shoulder. (R. 266).

However, in March 2006, Plaintiff began complaining of pain in his left hip and thigh and numbness in his left buttocks region and lower left thigh. (R. 208). Neurologist Dr. Sherill Loring observed that Plaintiff had no motor weakness and his gait was normal, but that Plaintiff would likely suffer from chronic pain and recommended neuropathic medication such as Lyrica, gabapentin and carbamazepine. (R. 208).

The only post-amended onset date medical evidence is that of Dr. Wilda Murphy from her exams of Plaintiff in 2007 (R. 332, 348). Dr. Murphy first began treating Plaintiff in February 2007, two months before Plaintiff's amended disability onset date of April 7, 2007. (R. 334). Plaintiff told Dr. Murphy on February 14, 2007 that pain medications he had taken had "impaired his functioning and thinking." (R. 335). Plaintiff also complained of significant pain in his penis and groin area from when he tried to cut his Foley catheter shortly after he was discharged from Shands in 2005. (R. 334). Plaintiff claimed his pain was continuous and severe. (R. 334). At this point, Plaintiff was working at a dairy as a welder 30-50 hours per week, where he had begun work on April 13, 2006. (R. 293-318, 337). During this same visit, Dr. Murphy stated

that Plaintiff's motor strength was full in all his extremities and that he was able "to heel/toe walk and squat without difficulty." (R. 336).

When Plaintiff came for a return visit on May 9, 2007, Dr. Murphy observed that while Plaintiff still had an overactive bladder, he did not experience pain with urination but rated his average pain level in his pelvis and groin area "at a 7-8." (R. 332). In addition, Plaintiff still had full motor strength, was "able to heel/toe walk and squat without difficulty," and was alert and oriented. (R. 333).

On March 5, 2008, seven months after Plaintiff's administrative hearing, Plaintiff submitted an additional medical opinion made by Dr. Murphy. This opinion was made on August 1, 2007. At that time, Dr. Murphy noted that Plaintiff denied side effects from his medications and complained of constant pain "rated at 8/10." (R. 348). Dr. Murphy made no observation of his motor strength or gait. However, on February 26, 2008, she completed a Medical Source Statement of Ability To Do Work-Related Activities, in which she stated that Plaintiff was able to lift up to 20 pounds occasionally and 10 pounds frequently, stand or walk for less than two hours per workday, and sit for six hours per workday. (R. 350). She also indicated that Plaintiff could never climb, balance, stoop, kneel, crouch, crawl, or push/pull with his legs, but that he had an unlimited ability to reach, handle, finger, feel, and hear. (R. 351).

## F. SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff was a 46-year-old high school graduate at the time of the hearing, and last worked April 2006. (R. 356, 360). His primary problem is chronic fatigue, chronic

**No. 1:08CV127-MP/AK**

pain in his pelvic area, and short-term memory loss. (R. 356, 358). His pelvic pain is constant at the area where he broke his pelvis in his motor vehicle accident, and the pain goes from the base of his spine down to his left leg. (R. 356). He has not been hospitalized for any of his problems in the previous year. (R. 358). After his accident he had returned to working as a welder for nearly a year but can no longer do so because his pain medication does not get rid of his pain and his pain medication "fuzzes" up his head. (R. 360).

He can sit for 30 or 45 minutes at a time, sliding down in his chair to take weight off his pelvis and has to lie down for four to five hours out of a typical eight-hour workday. (R. 361). He estimates that he can only stand up for one hour at a time and can only lift up to 20 pounds. (R. 360). He is able to perform light household chores, including vacuuming and taking out the trash, but does not do any yard work, and he is able to go fishing and occasionally drive to a nearby store. (R. 359). Because of his short-term memory problem, he makes himself notes and also reports that his pain medication "fuzzes" up his head so that he is "messed up on pain pills." (R. 358, 360).

## G. DISCUSSION

### a) Due Process and Full and Fair Development

Plaintiff argues that his due process rights were violated because the ALJ conducted a brief (14 minute) hearing.

As the Commissioner points out, without a showing of prejudice, such as a failure to fully develop the record, Plaintiff's due process argument fails. See <u>Kelley v.</u>

**No. 1:08CV127-MP/AK**

Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985) (12 minute hearing did not violate due process).  Plaintiff's argues generally that a condition such as his, post-traumatic pain and a closed head injury, cannot be developed adequately in 14 minutes.  He also contends that the primary evidence supporting the ALJ's decision, state agency physician opinions from 2005, is outdated because it is prior to his amended onset date of April 7, 2007.

It is well settled that the ALJ has a duty to develop a full and fair record.  Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam); Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997); Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988); Cowart v. Schweiker, 662 F.2d 731, 735-36 (11th Cir. 1981).  This is true even when the claimant is represented by counsel. Cowart, 662 F.2d at 735.  The ALJ's duty to develop the record applies in cases in which he believes he lacks information critical to the determination of a factual issue; he is, however, under no duty to "go to inordinate lengths to develop a claimant's case."  Thompson v. Califano, 556 F.2d 616, 618 (1st Cir. 1977);  Ferguson v. Schweiker, 765 F.2d 31 (3d Cir. 1985).  "There is no bright line test for determining when the [Commissioner] has . . . failed to develop the record.  The determination in each case must be made on a case by case basis."  Battles v. Shalala, 36 F.3d 43, 458th Cir. 1994).

Plaintiff first sought treatment from Dr. Murphy in February 2007. (R. 334-338). His primary complaint was pain in his groin area from the pelvic fractures incurred as a result of the 2005 MVA and a self-inflicted genital injury when he attempted to remove

**No. 1:08CV127-MP/AK**

his catheter with a knife (R. 334). He did not mention a closed head injury nor did he complain of any neurological issues during the examination. Dr. Murphy's neurological examination was "alert and intact," reflexes and motor strength were normal. (R. 336). At the time of this examination, Plaintiff was working as a welder at a dairy farm 30 to 50 hours a week. (R. 335). Dr. Murphy examined Plaintiff again on May 2007 for "chronic pain related to prior pelvic trauma." (R. 332). He had just quit his job and was awaiting a hearing on his application. (R. 332). This is the only post-onset medical evidence in the record at the time of the hearing. Later submitted evidence, Dr. Murphy's August 2007 treatment note and February 2008 Medical Source Statement, were presented to the Appeals Council, but the Council did not consider the evidence sufficient to warrant remand. (R. 5-9).

      Plaintiff implies that the ALJ should have conducted a more thorough hearing because of his closed head injury and pain. However, an ALJ is not required to develop facts or order medical evidence to have a complete record unless the record establishes that it is necessary to enable the ALJ to render his decision. Holladay v. Bowen, 848 F.2d 1206 (11th Cir. 1988)(concerning the ordering of a consultative examination; Kelly, 761 F.2d at 1540 (concerning additional medical information submitted by the claimant). The latest medical evidence from Dr. Murphy did not mention any issues related to Plaintiff's head injury and even though Plaintiff reported to her that he was experiencing significant pain, he was working full time as a welder at that time (February 2007). When he reported to Dr. Murphy that he quit his job, there is nothing in the treatment

**No. 1:08CV127-MP/AK**

notes to reflect that this decision was the result of any change in his physical condition. In fact, Dr. Murphy's findings are the same as in the previous treatment notes: gait was normal, range of motion was normal in all 4 extremities, motor strength "full" in all four extremities and he was able to heel/toe walk and squat without difficulty. (R. 333). He was to continue on pain management with medication and she wrote that she did not intend to increase the prescription for Lortab because he was not taking his other pain medication as prescribed.

At the hearing, Plaintiff described his primary problem as "pelvic pain," and that his short term memory loss requires him to write himself notes or he will forget what he is doing. His demeanor at the hearing did not indicate any functional limitations resulting from a brain injury, Plaintiff was articulate, responded well to all the questions asked of him, and described daily activities inconsistent with someone suffering from a brain injury.

Thus, the undersigned finds that neither the medical records nor testimony at the hearing supports a deterioration of or significant change in his condition such as to put the ALJ on notice of a need for additional post-onset (after April 2007) development of either his chronic pain or previous brain injury.

    b)    <u>Treating physician opinion</u>

Plaintiff argues that the ALJ gave greater weight to the functional assessments of non-examining State Agency physicians made in 2005 prior to his amended onset date

**No. 1:08CV127-MP/AK**

than the assessment of his treating physician, Dr. Wilda Murphy, who examined him in 2007, after his amended onset date.

20 CFR §§ 404.1527(d(2)(I), 416.927(d)(2)(I) provides: "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source."

In Step 4 of the 42 U.S.C. §§ 405(a) five-step sequential evaluation process to determine disability, the ALJ determines Plaintiff's residual functional capacity, which is the most an individual can do despite the combined effect of his credible limitations. See Barnhart v. Thomas, 540 U.S. 20, 25 (2003); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th 1997). In making this determination, the ALJ bases his findings on all of the relevant evidence in the record. Barnhart, 540 U.S. at 25.

Contrary to Plaintiff's argument, the ALJ did not reject any the post-onset medical evidence from Dr. Murphy but rather viewed Dr. Murphy's findings as confirming pre-onset assessments from Drs. Bancks and Puestow that Plaintiff was capable of performing medium work. The Medical Source Statement of Dr. Murphy dated February 26, 2008, which reflects only a light exertional capacity, was not before the ALJ at the time of his decision. See Ingram v. Commissioner of Social Sec. Admin., 496 F.3d 1253, 1266 (11th Cir. 2007) ("[W]hen a claimant challenges the administrative law

**No. 1:08CV127-MP/AK**

judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence submitted to the Appeals Council."). In addition, sentence six of 42 U.S.C. § 405(g) provides that the district court may remand the case to the Commissioner for "additional evidence to be taken before the Commissioner . . . *but only* upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added).

There is no argument from Plaintiff that the later submitted evidence is new and material evidence under this standard, and indeed, the 2008 statement is inconsistent with Dr. Murphy's previous medical records, contains no supporting clinical data or information, and is unsubstantiated by any clinical or laboratory findings.

Thus, there is substantial evidence from both examining and non-examining physicians before and after Plaintiff's amended onset date to conclude that Plaintiff had the residual functional capacity to perform medium work, including his past work as a welder.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this  **10th** day of November, 2009.

                                       *s/ A. KORNBLUM*
                                       **ALLAN KORNBLUM**
                                       **UNITED STATES MAGISTRATE JUDGE**

**No. 1:08CV127-MP/AK**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:08CV127-MP/AK**